# FOR PUBLICATION



FILED
Aug 07 2014, 10:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONNA JAMESON**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**JONATHAN R. DEENIK**
Cross Pennamped Woolsey & Glazier, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RYAN GOLD,                         )
                                   )
   Appellant-Petitioner,          )
                                   )
      vs.                     )     No. 49A02-1311-JP-995
                                   )
STARR WEATHER,                     )
                                   )
   Appellee-Respondent.           )

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis Rosenberg, Judge
The Honorable Marie Kern, Master Commissioner
Cause No. 49C01-0902-JP-5700

**August 7, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

Appellant-Petitioner, Ryan A. Gold (Father), appeals the trial court's Order approving the relocation request of Appellee-Respondent, Starr C. Weather (Mother), and denying his motion to modify custody.

We affirm.

## ISSUES

Father raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred by finding that Mother's relocation was made in good faith and for a legitimate purpose; and

(2) Whether the trial court erred by denying his motion to modify custody.

## FACTS AND PROCEDURAL HISTORY

Father and Mother have one child together, a daughter, M.G. (the Child), born on August 7, 2008. Father works part-time and is a full-time student; he expects to receive his degree in occupational therapy by the end of 2014. Father lives in Indianapolis, Indiana, with his wife, W.G., a registered nurse. Father and W.G. have an eight-year-old daughter and a two-year-old son together. Mother is a registered nurse and, prior to July of 2011, lived in Terre Haute, Indiana, where her mother (Child's Grandmother), fifteen-year-old sister (Child's Aunt), and ten-year-old brother (Child's Uncle) also lived.

At some point after the Child's birth, the relationship between Father and Mother began deteriorating and eventually reached a very acrimonious state. The Child was nearly eight months old before Father's paternity was established by a paternity affidavit on

March 30, 2009. Mother was the Child's sole legal and physical custodian, and on September 9, 2009, Father filed a petition to establish custody, parenting time, and child support. On March 1, 2010, Mother filed a petition seeking an order for protection against Father's wife, W.G., which the trial court denied.

On March 19, 2010, the trial court approved the parties' preliminary agreement, under which Mother retained physical custody, and Father received parenting time. The parties agreed, in part, that only Father and Mother—no third parties—would transport the Child for parenting time exchanges. With Father living in Indianapolis and Mother in Terre Haute, the parties met in Greencastle, Indiana, to exchange the Child. Less than two weeks after implementation of the preliminary agreement, Father filed a contempt motion against Mother. A hearing was set for July, but on April 27, 2010, Father filed a subsequent verified emergency motion for rule to show cause. At a hearing on May 7, 2010, the trial court declined to find Mother in contempt, instead ordering that all non-emergency communication between Father and Mother must occur through email and that Father is entitled to eight full hours for his parenting time.

On September 16, 2010, per the parties' agreement, the trial court issued an order recognizing Father as the Child's biological father. The trial court awarded primary custody to Mother. Father received parenting time in accordance with the Indiana Parenting Time Guidelines and was ordered to pay $63.00 per week in child support.

On December 3, 2010, Mother filed for another protective order—this time, against Father. She alleged that Father had abused and raped her and that he was an endangerment to the Child. The trial court denied Mother's petition, citing a lack of evidence to merit an

3

*ex parte* protective order. Although the trial court extended Mother an opportunity to present additional evidence, Mother did not pursue the matter.

On Christmas Day of 2010, Father picked the Child up in Greencastle at 2:00 PM for his scheduled holiday parenting time, and the Child spent the remainder of the day celebrating with Father's extended family in Indianapolis. The parties had planned to meet in Greencastle later that evening to re-exchange the Child, but for an indeterminate reason, the exchange did not occur. Father and Mother provided drastically different versions of the events that night, which the trial court ultimately reconciled to find that "a third party was involved in the parenting time exchange and there were issues with both parties being at the same spot, at the same time. Father did not drive to Terre Haute to return the [C]hild and Mother called the police, alleging Father kidnapped the [C]hild." (Appellant's App. p. 24). Indianapolis police officers retrieved the Child from Father's home that night and turned her over to Mother.

Following the mayhem of the Christmas Day exchange, Mother denied Father access to the Child. Father sent numerous email messages to Mother and drove to the Greencastle exchange point on his scheduled days, but his efforts to see the Child were unsuccessful. On January 30, 2011, Mother finally communicated to Father that she was restricting his parenting time as a result of his "actions" on Christmas Day. (Appellant's Exh. 1, p. 11). In her email, Mother further exclaimed,

> You not only caused our [C]hild confusion[,] you also failed to do what was in the best interest of her. . . . You do not pay child support nor have you in the past [six] months. I could have been fired for your actions. All you had to do is make a simple phone call. What you did was considered kidnapping! and not to be taken lightly.

4

(Appellant's Exh. 1, p. 11). For the next five months, Mother withheld parenting time, and Father continued to protest her denial of his parental rights via email. At one point, Mother informed Father that they needed to make an appointment with a court mediator before she would allow parenting time, stating "I am afraid to be in ur (*sic*) presence as well as if my [C]hild will return home when leaving with you." (Appellant's Exh. 1, p. 12). On May 12, 2011, Father filed a verified motion for contempt.

On May 23, 2011, Mother sent an email to Father that stated, "I am sending this email to inform you of our ([the Child] and myself) intent to relocate to Atlanta[,] [Georgia], in July 2011." (Appellant's App. p. 41). Less than an hour later, Father replied to inform Mother that her email message was insufficient notice "[a]ccording to the [S]tate guidelines." (Appellant's App. p. 42). On June 8, 2011, having received no response from Mother, Father sent another email, stating that he did "not agree with [his] [C]hild being taken to another state where she has no family or familiar faces." (Appellant's App. p. 43). Mother finally responded later that day and provided additional details about the relocation. She explained that "[the Child] and mine (*sic*) immediate family are relocating to [the Atlanta] area. This is our support system; these people are apart (*sic*) of ou[r] every day (*sic*) life. They come to [the Child's] events and are there when she is sick and provide lots of support for her and myself." (Appellee's Exh. B). Mother additionally discussed Father's alleged domestic abuse, her concerns for the safety of the Child and herself, and Father's "inability . . . to return [the Child] after visits" as "[s]ome of the issues leading to this point." (Appellee's Exh. B).

On June 17, 2011, Mother filed her official notice with the trial court, declaring her intent to relocate to Stockbridge, Georgia, as of July 1, 2011, because

> of our family relocation and job relocation. My mother as well as my siblings provide a very important role in [the Child's] life. They help with all of [the Child's] every day (*sic*) things. The[y] provide babysitting, daily mildstone (*sic*) support, extra transportation, and support to extracurricular activities when I have to work. Without our family in our daily lives things would be very hard for [the Child] as well as myself.

(Appellant's App. pp. 39-40). On June 29, 2011, Father filed a Verified Emergency Motion for Rule to Show Cause and Objection to Notice of Intent to Relocate Residence, arguing that Mother had failed to comply with the notice requirements of the relocation statute; that Mother had denied his parenting time; and that the relocation would inhibit his ability to exercise parenting time. Without waiting for the court's permission, Mother relocated to Stockbridge at the beginning of July. Initially, they lived with a relative, but after a few months, Mother and the Child relocated to Dallas, Georgia, to live in a five-bedroom house with the Child's Grandmother, Aunt, and Uncle. After moving, Mother secured a higher-paying nursing job than she had in Terre Haute.

In response to Father's objection to the relocation, the trial court ordered Mother to appear on July 7, 2011, to "show cause why she should not be attached and punished for contempt." (Appellant's App. p. 47). On July 1, 2011, Mother sought a continuance, claiming that she had

> just relocated to Stockbridge GA in the past two days. Three business days is not sufficient time for me to make plans to attend court on July 7th 2011. I notified [Father] on May 23rd, 2011 by email. I assumed action would be taken way before the date of my relocation. I notified the court on June 17th 2011 as I was not aware that I had to notify both. This seems unreasonable

6

as well as unjust for me to only have a three business day notice of a court date when I am in a different state.

(Appellant's App. p. 49). Based on Mother's non-compliance with the relocation statute's notice requirements, the trial court declined to continue the hearing. Mother appeared in court as ordered, but the hearing was reset in order to allow the parties an opportunity to negotiate a resolution. No agreement was reached.

Subsequent to Mother's relocation, Father did not have any parenting time or otherwise communicate with the Child. By December of 2011, Father had not had any parenting time for nearly a year. Upon Father's expedited motion for a hearing, the trial court conferred with the parties and issued an order specifying Father's holiday parenting time. On December 28, 2011, Father filed a motion to modify the Child's legal and physical custody. Because Father and Mother remained unable to cooperate in order to formulate a more workable post-relocation parenting time plan, the trial court had to convene the parties on two additional occasions in order to designate Father's spring break and summer parenting time schedules.

On August 8, 2012, one day after the Child's fourth birthday and more than a year after Mother moved to Georgia, the trial court conducted a hearing on Father's objection to the relocation, accepting evidence solely on the issue of whether Mother's relocation was made in good faith and for a legitimate reason. On October 15, 2012, the trial court issued specific findings and conclusions thereon and determined that Mother had satisfied her burden to prove that the relocation was proposed in good faith and for a legitimate purpose. On October 19, 2012, Father filed a motion for certification of an interlocutory

appeal. The trial court denied Father's motion the same day, reasoning that "[n]o material question of law has been presented." (Appellant's App. p. 89).

Just before the Child's fifth birthday, on July 30, 2013, the trial court conducted a hearing on the remaining relocation issues, including the Child's best interests and modification of custody. On October 28, 2013, the trial court issued its final Order. In a new set of factual findings and conclusions, the trial court determined that Father had failed to establish that the relocation would be contrary to the Child's best interests and denied both Father's objection to the relocation and his motion to modify physical custody. However, the trial court modified the Child's legal custody to be shared jointly. In addition, as a contempt sanction for Mother's obstruction of Father's parenting time, the trial court ordered that Mother pay $2,000 of his attorney fees.

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Where the trial court has entered special findings of fact and conclusions thereon, our court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Under our well-established, two-tiered standard of review, we must determine whether the evidence supports the findings and whether those findings support the judgment. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. We consider the evidence most favorable to the trial court's judgment, and we do not reweigh evidence or reassess the credibility of witnesses. *D.C. v.*

8

*J.A.C.*, 977 N.E.2d 951, 954 (Ind. 2012). We will find clear error only if "the record does not offer facts or inferences to support the trial court's findings or conclusions of law." *Rogers v. Rogers*, 876 N.E.2d 1121, 1126 (Ind. Ct. App. 2007), *trans. denied*.

In this case, Mother requested that the trial court make specific findings and conclusions regarding the issue of whether her relocation was in good faith and for a legitimate purpose. When a party requests special findings and conclusions thereon, "we may affirm the judgment on any legal theory supported by the findings." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011). However, because Mother withdrew her request for special findings regarding the Child's best interests and modification of custody and because Father did not file his own request, the trial court's second set of findings and conclusions was entered *sua sponte*. *See* T.R. 52(A), (D). *Sua sponte* "findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial." *Miller v. Carpenter*, 965 N.E.2d 104, 108-09 (Ind. Ct. App. 2012).

In conjunction with the Trial Rule 52 standard, there is a longstanding policy in our State that appellate courts should defer to the determinations of trial courts in family law matters. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We accord this deference because trial courts directly interact with the parties and are thus in a superior position "to assess credibility and character through both factual testimony and intuitive discernment." *Id.* Conversely, "appellate courts 'are in a poor position to look at a cold transcript of the record[] and conclude that the trial judge, who saw the witnesses, observed their demeanor,

9

and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C.*, 977 N.E.2d at 956-57 (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

## II. *Relocation*

### A. *Good Faith, Legitimate Reason*

Father claims that the trial court erred by finding that Mother demonstrated a good faith, legitimate reason for relocating to Georgia. Under Indiana's relocation statute, there are two ways for a non-custodial parent to object after receiving notice that the custodial parent intends to relocate: by filing a motion to prevent the relocation or by filing a motion to modify custody. *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011), *reh'g denied*. *See* Ind. Code §§ 31-17-2.2-1, -5. Following a motion to prevent relocation, the relocating parent must prove "that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the court finds a good faith, legitimate purpose for the relocation, the burden then shifts to the non-relocating parent to demonstrate "that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d). If the non-relocating party fails to object, the custodial parent is permitted to relocate with the Child. I.C. § 31-17-2.2-5(e).

Because there is no explicit criteria for determining whether a relocation is in good faith and for a legitimate reason, our court has generally required that the moving parent demonstrate an objective basis—that is, "more than a mere pretext"—for relocating. *T.L.*, 950 N.E.2d at 787. It is commonly understood in today's society that individuals move in order to live closer to family members, for financial reasons, and for employment

10

opportunities. *Id.* at 788. As such, "[w]e infer that these and similar reasons . . . are what the legislature intended in requiring that relocation be for 'legitimate' and 'good faith' reasons." *Id.*

In the present case, the trial court determined that "Mother's relocation was done in good faith and for a legitimate purpose" because she "relocated to be with her family, an important and on-going support structure for her and the [C]hild. Mother also moved for financial reasons, including the ability to live with [the Child's Grandmother] and take a job earning more income than she had previously earned." (Appellant's App. pp. 17-18). Additionally, the trial court found that, prior to relocating, Mother's

> extended family, including the [Child's Grandmother], played an important and on-going role in the [C]hild's life. Mother's extended family would assist in the [C]hild's care, provided financial support to Mother, and had contact with the [C]hild [one to two] times per week. Mother's extended family has a close and bonded relationship with the [C]hild, and has since her birth.

(Appellant's App. pp. 16-17).

Father now contends that Mother's inadequate notice and efforts to inhibit his relationship with the Child evince her spurious motives for relocating. We agree with Father that the evidence clearly demonstrates that Mother moved without waiting for court approval and without providing the requisite ninety-day notice, and that Mother prevented Father's parenting time from December of 2010 through December of 2011. While the trial court may consider noncompliance with the notice provision and obstruction of parenting time as indicative of a parent's insidious intent, we find that these facts, of themselves, are not dispositive of the issue of a good faith, legitimate reason for relocating.

First, the relocation statute provides a distinct remedy for a parent's failure to provide the proper notice: the trial court may grant a temporary restraining order to prohibit the relocation or order that the child be returned to the non-relocating parent. I.C. § 31-17-2.2-6(a). Here, the trial court noted that Mother "moved without appropriate notice and opportunity for [Father] to be accorded a hearing"; yet Father did not request—and the trial court did not independently order—that Mother be compelled to return the Child to Indiana pending the final hearing. (Appellant's App. p. 71). Second, Indiana Code section 31-17-4-3 authorizes the trial court to award attorney and other fees upon a finding that the custodial parent violated a parenting time order. Here, the trial court elected to sanction Mother for interfering with Father's parenting time by ordering her to pay $2,000 of his attorney fees.

Father also argues that Mother used her family's relocation as "a smoke screen for her real reason[] behind the relocation, which was to deny [Father] parenting time with [the Child]." (Appellant's Br. p. 17). In particular, Father challenges the extent to which Mother actually relied on her family for help with the Child and also points out that Mother did not have employment in Georgia until after she moved. He also maintains that Mother's "real reasons for relocating"—including Father's alleged abuse and kidnapping—do not constitute legitimate and good faith bases. (Appellant's Br. p. 18).

As our court has recognized, if "the requirement of a legitimate and good faith reason[] posed an inordinately high bar for a relocating parent to meet, it could too often prevent trial courts from . . . appropriately deciding the dispute based on the best interests of the affected child." *T.L.*, 950 N.E.2d at 788. Even so, we recognize that it would render

12

the relocating parent's burden of proof meaningless if we were to accept as legitimate "any stated reason that is not an outright admission that the parent is relocating to interfere with the other parent's rights." *Gilbert v. Gilbert*, 7 N.E.3d 316, 326 (Ind. Ct. App. 2014), (Robb, J., dissenting). In the case at hand, a review of the record reveals that Mother was raising the Child in Terre Haute while Father lived in Indianapolis. As a single parent, she relied upon the emotional—and occasionally financial—support of her family, primarily the Child's Grandmother. Mother testified that the Child is very "attached" to the Child's Grandmother and has a sibling-like relationship with the Child's Aunt and Uncle, all of who have been very involved in the Child's life. When the Child gets sick or has a school function or extracurricular activity that interferes with Mother's work schedule, it is the Child's Grandmother who cares for the Child or attends the event. Mother further testified that shortly after the Child's Grandmother decided to relocate to Georgia for personal reasons and employment, Mother also decided to move because they "wanted to be together." (Transcript p. 32). Mother has extended family in both the Atlanta and Indianapolis areas, but she stated that she would have been left with no other family in Terre Haute after the Child's Grandmother, Aunt, and Uncle moved to Georgia.

Therefore, notwithstanding any evidence indicating that Mother's relocation was in bad faith and for the purpose of distancing the Child from Father, the record supports the finding that Mother legitimately desired to be near her family. It was the prerogative of the trial court to accord more weight to the evidence favoring Mother, and it is not the role of this court to reweigh evidence or assess witness credibility. *In re Paternity of X.A.S.*, 928 N.E.2d 222, 224 (Ind. Ct. App. 2010), *trans. denied*. Accordingly, we find there is

sufficient evidence to support the trial court's finding that Mother relocated in order to be close to her immediate and extended family, which is a legitimate purpose.[1]

### B. *Modification of Custody*

Father also claims that the trial court erred by denying his motion to modify the Child's physical custody. In general, a court must find that modification would be in the child's best interests and that there has been a substantial change in circumstances. I.C. § 31-17-2-21. However, where a motion for custody modification is filed in response to a relocation, the trial court must instead take the following factors into account in deciding whether to modify custody:

(1) The distance involved in the proposed change of residence.
(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time . . . .
(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time . . . arrangements, including consideration of the financial circumstances of the parties.
(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the individual to either promote or thwart a nonrelocating individual's contact with the child.
(5) The reasons provided by the:
(A) relocating individual for seeking relocation; and
(B) nonrelocating parent for opposing the relocation of the child.
(6) Other factors affecting the best interest of the child.

---

[1] Based on the trial court's determination that Mother offered a good faith, legitimate reason for relocating, the burden shifted to Father to prove that Mother's relocation would not be in the Child's best interests. Rather than challenging the trial court's finding that he failed to satisfy his burden of proof for his motion to prevent the relocation, Father proceeds directly to the trial court's denial of his motion to modify custody. *See* I.C. § 31-17-2.2-5. Regardless of whether the parent objects by filing a motion to prevent the relocation or a motion to modify custody, "if the relocation is in good faith 'both analyses ultimately turn on the best interests of the child.'" *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1254 (Ind. Ct. App. 2009) (quoting *Baxendale v. Raich*, 878 N.E.2d 1252, 1256 n.5 (Ind. 2008)). *See* I.C. § 31-17-2.2-1(b).

14

I.C. § 31-17-2.2-1(b). *See Baxendale v. Raich*, 878 N.E.2d 1252, 1256-57 (Ind. 2008).

The "[o]ther factors" to be considered are enumerated in Indiana Code section 31-17-2-8 for ascertaining a child's best interests:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parent or parents;
>     (B) the child's sibling; and
>     (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
>     (A) home;
>     (B) school; and
>     (C) community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian . . . .

In this case, the trial court modified the *legal* custody of the Child to be jointly shared by the parties; thus, Father asserts that the trial court's findings are insufficient to support its conclusion that Mother should retain *physical* custody. We disagree.

In its final Order, the trial court made numerous findings addressing its consideration of the factors enumerated in the relocation statute. *See* I.C. § 31-17-2.2-1(b). Specifically, the trial court found that the distance between Indiana and Georgia is approximately 600 miles and an eight-hour drive each way. Although the parties meet at a midpoint in Tennessee, Father must stop for gas twice, which the trial court acknowledged "creates a hardship on Father due to the cost." (Appellant's App. p. 23). Father earns $200 per week from his part-time employment and is dependent upon W.G.'s

15

income to support their family, whereas Mother earns an annual salary of $65,000. On appeal, Father posits that the trial court "failed to address [this factor] past [the] finding" that he would suffer a hardship. (Appellant's Br. p. 20). Our court has previously held that the trial court must evaluate each statutory factor in deciding whether to modify custody, but the amount of consideration to accord each factor is left to the trial court's discretion. *See Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008). Here, we find it clear that the trial court considered Father's hardship.

The trial court also discussed the Child's involvement in various extracurricular activities in Georgia and found that "Father is unable to participate in these activities because of the distance involved." (Appellant's App. p. 24). However, the trial court surmised that even though "the distance involved makes parenting time a challenge," it "does not make it impossible for Father to continue to have a bonded relationship with the minor [C]hild, especially in this day and age of modern technology." (Appellant's App. p. 27). To this end, the trial court ordered that "the parties shall make any necessary accommodations to allow Father to engage in online communication with the [C]hild." (Appellant's App. p. 29). Father now contends that "[w]hile modern technology has it[s] advantages, it is not a feasible way for a parent to maintain a meaningful relationship with a child." (Appellant's Br. p. 21). Again, we disagree. The trial court's parenting time order actually affords Father more time than stipulated in the Indiana Parenting Time Guidelines for long-distance cases. *See Dixon v. Dixon*, 982 N.E.2d 24, 27-28 (Ind. Ct. App. 2013). Furthermore, it is clear that the trial court intended for the online communication to supplement the parent-child relationship during Father's parenting time

16

gaps. Accordingly, we find that the trial court's findings sufficiently address the issue of preserving the parent-child relationship.

Father also contends that the trial court's refusal to modify custody is unsupported by its ample findings that Mother thwarted Father's relationship with the Child. In addition to withholding Father's parenting time for nearly one year, Mother did not provide a parenting time schedule for Father when she relocated; she withheld parenting time based on Father's delinquent child support payments as well as her "exaggerated" claims about Father's kidnapping and physical abuse; she did not apprise Father of the Child's enrollment in extracurricular activities; she refused to provide Father with the Child's school schedule and records, or even the name of the school, and would not authorize the school to release any information to Father; and she refused to disclose medical information and doctor's appointments to Father, even concealing that the Child underwent surgery before leaving Terre Haute. (Appellant's App. p. 27). From these findings, it is obvious that the trial court considered this factor. Therefore, whatever weight the trial court elected to accord Mother's efforts to undermine Father's relationship with the Child in light of the totality of the evidence is a matter with which our court will not interfere. *See D.C.*, 977 N.E.2d at 957.

As already discussed in detail, the trial court found Mother's desire to be close to her family was a legitimate purpose for relocating. Turning to Father's rationale for opposing the relocation, the trial court noted in its findings that "Father does not believe that Mother will encourage a relationship between Father and the [C]hild, as she has said in the past that she does not think [he] is a fit parent." (Appellant's App. p. 23). Father

17

testified that Mother "has never shown consistency with allowing [him] to be in [the Child's] life even when she was in . . . Indiana . . . [s]o, now that she is in Georgia, it hasn't gotten any better." (Tr. p. 70). Based on the evidence of Mother's efforts to undermine Father's relationship with the Child and the distance, Father's concern is reasonable, and the trial court's finding reflects its contemplation of this factor.

Regarding the Child's best interests, the trial court found that "Mother has been the primary caregiver for the [C]hild and the [C]hild has a close bond with the [Child's Grandmother, Aunt, and Uncle], who all reside within the home and with whom the [Child] was bonded, prior to the relocation." (Appellant's App. p. 27). *See In re Paternity of X.A.S.*, 928 N.E.2d at 224 (noting the upheaval it would cause if the twelve-year-old child was removed from his custodial parent of nine years). As Mother testified during the hearing, she and the Child live in a five-bedroom house with the Child's Grandmother, Aunt, Uncle, and the family's dog. The Child's Uncle is close in age to the Child, and the Child has a sibling-like relationship with both her Aunt and Uncle. The Child's Grandmother coordinates with Mother to transport the Child to school and other activities. On weekdays, Mother works from home and is out in the field for four to six hours on the weekends; thus, while after-school care is occasionally necessary when Mother has extra work, she generally spends her days with the Child, and the Child's Grandmother or Aunt are there to provide childcare on the weekends. On the other hand, Father attends school during the morning, is home for a few hours, and then works all evening; he does not work on weekends, which is when he spends time with his children.

By the time of the final hearing, the five-year-old-Child had lived in Georgia for two years, she had completed preschool and was registered to begin kindergarten at a school in Mother's neighborhood. Mother and the Child attend church together, and the Child has participated in ballet, tap dance, karate, tennis, and a beauty pageant since moving to Georgia. Father testified that, if granted custody, the Child would attend kindergarten in Indianapolis at the same school as her older half-sister.

The trial court found that the Child has extended family nearby in Georgia, as well as a significant amount of family in Indianapolis, including relatives of both Father and Mother. While Mother testified that the Child has a relationship with her maternal grandfather, she is not close to the other Indianapolis family members on Mother's side. Mother testified that the Child is safe and secure in her care and has become familiar with her surroundings and maintains that it is in the Child's best interests to remain in her custody as "the [C]hild will continue to have important and meaningful relationships with her extended family, who have had an active role in her life." (Appellee's Br. p. 13). Similarly Father testified that the Child "knew who all our relatives were on my side of the family, and they all . . . , when I did get her, everyone would come over, and spend time with her." (Tr. p. 90). Although Father submitted evidence of his unsuccessful efforts to spend time with the Child following Mother's termination of his parenting time in December of 2011, he did not present any evidence of his relationship with the Child or the Child's relationship with W.G. and his other two children.

Because the trial court's findings indicate that it considered each statutory factor, albeit not to the extent that Father may have preferred, we cannot say that the trial court's

19

decision is clearly erroneous. It was well within the discretion of the trial court to place more weight on the evidence that favors Mother as the physical custodian based on the Child's best interests rather than the evidence favoring Father based on Mother's efforts to thwart his relationship with the Child. *See D.C.*, 977 N.E.2d at 957.[2]

### CONCLUSION

Based on the foregoing, we conclude that the trial court neither erred in its determination that Mother had a good faith, legitimate reason for relocating, nor in its denial of Father's motion to modify the Child's physical custody.

Affirmed.

BRADFORD, J. concurs

ROBB, J. concurs in result with separate opinion

---

[2] Although not an issue raised by either party, we must note our discomfort over the trial court's decision to modify the custody order by ordering that Father and Mother share joint *legal* custody. All of the evidence and all of the trial court's findings make it abundantly clear that the parties are unable and unwilling "to communicate and cooperate in advancing the [C]hild's welfare." I.C. § 31-17-2-15. Furthermore, the trial court's award is essentially meaningless as Mother is authorized to override any of Father's opinions regarding medical, educational, and religious decisions if she disagrees.

**IN THE**
**COURT OF APPEALS OF INDIANA**

RYAN GOLD,                          )
                                    )
    Appellant-Respondent,           )
                                    )
      vs.                          )      No. 49A02-1311-JP-995
                                    )
STARR WEATHER,                      )
                                    )
    Appellee-Petitioner.            )

**ROBB, Judge, concurring in result**

I concur in the result reached by the majority, but write separately to comment on a troubling aspect of the specific proceedings here and relocation cases in general.

Pursuant to the relocation statutes, Mother was required to provide notice of her intent to move ninety days prior to the date she intended to relocate. Ind. Code § 31-17-2.2-3(a)(1)(B). Mother did not file her notice at least ninety days prior to her intended relocation; in fact, she filed the notice on June 17, 2011, stating that she intended to move on July 1, 2011. Upon receiving that notice, Father had sixty days within which to object

21

and seek an order preventing relocation. Ind. Code § 31-17-2.2-5(a). Father filed his objection on June 29, 2011, and the trial court set a hearing for July 7, 2011. At the evidentiary hearing regarding relocation, Mother was to have the burden of proof "that the proposed relocation is made in good faith and for a legitimate reason," Ind. Code § 31-17-2.2-5(c), and if she met that burden, Father would then have the burden "to show that the proposed relocation is not in the best interest of the child," Ind. Code § 31-17-2.2-5)(d).

Based on the averments in Mother's July 1, 2011, motion to continue the hearing, see slip op. at 6-7 (quoting Appellant's Appendix at 49 where Mother states she had relocated "in the past two days"), she had moved to Georgia even before July 1 and certainly before a hearing was held regarding her "intent" to relocate. In denying Mother's motion to continue the hearing, the trial court specifically noted that she had failed to comply with the relocation statute's notice provisions. Nonetheless, a hearing was not held on that day to allow the parties an opportunity to reach an agreement, though they were unable to do so. For a variety of reasons, including multiple motions to continue filed by both Mother and Father, a hearing was not held on the relocation until August of 2012. In the interim, several emergency motions regarding holiday and summer visitation were heard by the court, including a hearing on June 28, 2012, at which the court specifically noted:

> It is clear to the Court that the fact [Mother] lives in Georgia with the child of this relationship is the obstacle to regular parenting time. [Mother] moved without appropriate notice and opportunity for [Father] to be accorded a hearing to address visitation issues in advance.

22

Appellant's Appendix at 71.

The trial court finally heard evidence regarding the first prong of relocation on August 8, 2012, and issued an order on October 15, 2012, finding that Mother had met her burden of proving a good faith and legitimate purpose for her move and confirming a hearing on the second prong for October 17, 2012. Again, due to multiple motions to continue (most if not all filed by Father), the best interests hearing was postponed for nearly a year, finally being held on July 30, 2013, at which time Mother and Child had been living in Georgia for over two years. The trial court references this fact in its October 28, 2013, order and in part relies on the Child's situation in Georgia in finding that Father has not met his burden of establishing relocation is not in her best interests—noting that Mother has been the primary caregiver, that the Child has a close bond with her maternal grandmother and aunt and uncle with whom she lives, and noting some of the activities Child participates in in Georgia.

Mother's primary stated reason for moving was to remain close to her mother and siblings, who she characterized as playing "a very important role in [Child's] life. . . . They provide babysitting, daily . . . support, extra transportation, and support to extracurricular activities when I have to work. Without our family in our daily lives things would be very hard for [Child] as well as myself." Appellant's App. at 39-40. In part, Mother was required to rely on her family because she was denying Father the opportunity to participate more fully in Child's life, and one would have hoped that Father would have had (and taken) the chance to play a similar role in supporting Mother and Child. But as the majority

states, it seems clear that Mother legitimately wanted to be near her immediate family and she and Child benefit from those close relationships. See slip op. at 13. While I believe we must set the bar for the relocating parent above merely stating a reason for moving, I also acknowledge that we cannot set the bar too high because the best interest of the child determination is paramount. See id. at 12-13 (citing Gilbert v. Gilbert, 7 N.E.3d 316, 326 (Ind. Ct. App. 2014) (Robb, J., dissenting)).

However, the fact that Mother may have had a good faith and legitimate reason for moving does not necessarily mean that she had a pressing reason for moving in advance of a hearing and court determination in accordance with the relocation statute. It is clear from the language of the statute that a parent is not to relocate prior to a hearing regarding whether the relocation is in the child's best interest. See Ind. Code § 31-17-2.2-5 (referencing the burden of proof at a hearing regarding the "proposed relocation"). Moreover, this is a long-standing common law rule, as well. Even before our statutes formally addressed relocation, caselaw held that an order granting a party visitation privileges impliedly grants the right to exercise those privileges, and the other party "may not make a unilateral determination that will effactually deny such a party's rights to exercise the visitation privileges . . . ." Marshall v. Reeves, 262 Ind. 107, 117, 311 N.E.2d 807, 813 (1974). In order to give effect to the original order, removal of the child from the jurisdiction "can only be made with prior judicial sanction, either by agreement of the parties approved by said court, or after due hearing before the court." Id. (emphasis added).

Mother offered no evidence regarding why her move had to be made at a certain time and certainly no evidence justifying her move not only in advance of a court hearing, but also well in advance of the timeline provided in the statute. This was not a matter of Mother or a subsequent spouse being transferred for work purposes. See, e.g., Kietzman v. Kietzman, 992 N.E.2d 946, 950 (Ind. Ct. App. 2013) (affirming trial court's grant of mother's request to relocate with child and new husband, whose job had offered him an assignment in China). And even though Mother ultimately found a higher paying job in Georgia, she did not begin looking for a job until after she had decided to move so that was not a precipitating factor. See, e.g., Nelson v. Nelson, 10 N.E.3d 1283, 1287 (Ind. Ct. App. 2014) (holding Mother's intention to move to South Carolina in part to seek employment when she was unable to find employment in Indiana was a good faith and legitimate reason for relocation). I believe Mother's move in violation of the terms of the relocation statute alone justifies closer scrutiny of her reasons for the move. And Mother's hasty move coupled with the court's reliance—however small—on the time she and the Child have lived 800 miles away from Father as support for its decision despite acknowledging her disregard makes a mockery of the statute. If a parent can ignore the requirements of the law, move the child without court approval, and then claim "primary caregiving" and "bonding" as a justification for staying with that parent being in the child's best interest— and moreover, if the court can acknowledge all of this and yet in effect reward the parent by approving what they have already done—then the relocation statute has no meaning and

25

no teeth.[3] I find it particularly egregious in this case, where it is clear from Mother's prior conduct in spuriously denying Father parenting time prior to her move and the court intervention required to ensure parenting time since, that she will not encourage or facilitate a relationship between Father and Child especially now that distance is an easy excuse.

Had Father been more aggressive in pursuing his rights and less complicit in the lengthy delay in this case, this would be a dissent rather than a concur in result. However, he apparently did not actively protect his relationship with Child even prior to Mother's move by pursuing contempt or other sanctions when she denied him parenting time for nearly a year, he did not seek an emergency temporary order to return Child to Indiana pending an evidentiary hearing and judicial resolution, and he filed repeated motions to continue that contributed to the time it took for the court to rule on this matter. Neither party has comported itself well, and we are left with no good solution in this case. However, considering all the circumstances but most particularly considering the best interest of Child at this late date, I concur in the result reached by the majority affirming the trial court's orders.

---

[3] I also believe the two year delay from when Mother filed her notice of intent to relocate to when a final order was issued is unconscionable on the part of both the parties and the court. The parties' numerous requests for continuance certainly played a substantial part in the delay, but the court also contributed to it. At the conclusion of part one of the hearing, the court requested the parties submit proposed findings, and as counsel discussed how soon they could do so, the court stated, "As far as I'm concerned, there is no real rush because I will probably; it will be a few several weeks before I get to it, to be perfectly honest." Transcript at 58. In fact, the court did not issue its findings for two months, and a second hearing was required thereafter to fully adjudicate the issues before the court. Although careful consideration is appreciated, some sense of urgency would have been appropriate. Had the court ultimately found in Father's favor, the disruption to Child's life would have been substantial two years down the road, even if Mother had elected to move back to Indiana in order to avoid a change of custody.