# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2017, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Lee Money
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Daun Weliever
Neal Bowling
Lewis Wagner, LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| G.H., <br> *Appellant-Respondent,* <br><br> v. <br><br> R.E., <br> *Appellee-Petitioner* | July 17, 2017 <br><br> Court of Appeals Case No. <br> 41A04-1701-DR-150 <br><br> Appeal from the Johnson Circuit Court <br><br> The Honorable K. Mark Loyd, Judge <br><br> Trial Court Cause No. <br> 41C01-0906-DR-269 |

**Baker, Judge.**

[1] G.H. (Father) appeals from the trial court's order permitting R.E. (Mother) to relocate to California with the parties' children. Father argues that there is insufficient evidence supporting the order. Finding the evidence sufficient, we affirm.

## Facts

[2] Mother and Father were married in 1997. Two children were born of the marriage: J.H., born in September 2005, and R.H., born in April 2007. The parties' marriage was dissolved in 2010, at which time Mother became the children's primary legal and physical custodian, and Father was given parenting time pursuant to the Parenting Time Guidelines.

[3] Since 2010, Mother has been the children's primary caregiver. She has been heavily involved with the schools they have attended, has taken them to all medical appointments, and has supported their involvement with various extracurricular activities.

[4] Shortly after the divorce, Father moved to another county, approximately sixty miles away from Mother and the children, because of an employment opportunity. Because of the distance, Father has not been as involved with the children's schools, has never taken them to a medical appointment, and has not been involved with their extracurricular activities. He spends approximately three hours with the children each Thursday, and they spend every other

weekend with him.[1]  They also speak on the phone most nights. Notwithstanding the distance, Father and both children are bonded and have close relationships.

[5]     Mother moved to Indiana in 1997 because of her marriage to Father.  All of her extended family, including her parents, her sister, and her sister's children, live in California.  She has little to no support network in Indiana.  Because of the lack of nearby support, Mother, who has a master's degree in secondary education, has had to find employment that offers significant flexibility, but little income, so that she can be available for the children.  While in Indiana, she has held various jobs.  At the time of the hearing in this case, Mother was an independent consultant for Norwex, a company that distributes chemical-free cleaning supplies, and a writer for the Malvern Schools.  Both jobs allow her to have a work schedule that works around the times she needs or wants to be available for the children.  If she had more support, such as nearby family members who could help with childcare and step in if one of the children got sick, she would be able to find and maintain a job with higher income.

[6]     When Mother and Father divorced, Mother was unable to refinance the marital residence.  Her parents liquidated part of a 401(k) account to provide her with sufficient funds to pay off the marital residence; as a result, she owes them

---

[1] Under the parties' agreement, Father is also permitted to have the children spend Sunday nights with him. But because of the distance between his house and the children's school, it would be impractical for them to do so.  Therefore, he has given up that right out of concern for their well-being, as well as his own ability to get to work in a timely fashion on Monday mornings.

$60,000. Her parents are aging and, while they still live independently and are mostly able to care for themselves, are reaching a point in time when they will need more help for things such as keeping the house clean and maintaining the lawn and landscaping.

[7] On January 7, 2016, Mother filed a notice of her intent to relocate with the children to California. Father filed the requisite objection to the relocation, and a hearing was held on August 16 and October 25, 2016. At the hearing, Mother explained that if she and the children relocated to California, she planned to move in with her parents.[2] This plan would enable her to provide help to her parents and would offer her free live-in childcare and more flexibility to find a job with a much higher income. She had not yet applied for any specific jobs because of the uncertainty surrounding the litigation, but would be able to maintain both her Norwex[3] and Malvern jobs in California until she successfully found employment that paid more. The move would also enable her to sell the marital residence and repay her parents the money that she owed them.

---

[2] There was some discussion at the hearing about a job that Mother had been interested in (but was filled by the time of the hearing) that would have been a two- to three-hour drive from her parents' house. Mother explained that even if she had not been able to move in with her parents, that job would have provided sufficient income to allow her to maintain her own residence, and she would have been able to spend time helping her parents on the weekends. Regardless, at the time of the hearing, Mother's intention and plan was to move in with her parents upon relocation.

[3] The move to California would also afford Mother opportunities to dramatically expand her Norwex business.

[8] Additionally, the move to California would provide the children with a close network of extended family members. While some of their extended family members on Father's side of the family live in Indiana—indeed, a paternal aunt even lives across the street—they are not close to those family members and rarely, if ever, interact with them.

[9] The children are doing well in their current school in Indiana, but school professionals testified that they have no concerns about the children's respective abilities to transition to a new school environment. The school district in which Mother's parents live is a well-regarded district with good schools; indeed, Mother and her sister both attended those schools themselves. The children would attend school with their cousins.

[10] Mother and Father have an extremely contentious relationship that both have played a role in over the years. They have difficulty communicating in a respectful way and primarily do so over text messages. But Mother emphasizes that if she moves, she would continue to encourage the children to maintain a relationship with Father. Specifically, Mother proposes the following accommodations in the event of the children's relocation:

- Father would get ten weeks, instead of seven, with the children during summer breaks.
- If Father's spring break did not align with the children's, he would get an additional week during the summer as compensation.
- Father would get one full week at Christmas time.
- The children and Father would have daily contact via phone or Facetime.
- Mother would help Father with the cost of plane tickets.

- Mother would abate Father's child support obligation.

Tr. Vol. II p. 83-86.

[11] On January 9, 2017, the trial court entered an order permitting the relocation of the children to California. Among other things, it found as follows:

> 4. [Mother]'s desire is motivated by a number of factors, including:
>
> > i) to reside with her folks . . . ;
> >
> > ii) to assist her elderly parents in maintaining their residence and independence;
> >
> > iii) live-in free child care;
> >
> > iv) expanded job opportunities;
> >
> > v) other relatives that live nearby; and,
> >
> > vi) to use proceeds from sale of her house in Indiana to reimburse her parents' financial contributions.
>
> ***
>
> 7. [Mother] has aptly demonstrated that her proposed relocation is made in good faith and for legitimate purposes. . . . [Mother]'s desire to be near a majority of her family, to support her elderly parents, and to bolster her financial opportunities are rational motivations in the context of this family.

9. . . . As a result of the distance and his work schedule . . . , [Father] relies significantly on e-mail and telephonic communication to maintain regular contact with the children. In addition, he has opted to forgo his Sunday overnights based upon his relocation.

10. . . . [Mother] . . . intends to live with her parents, and has extended family support within that area. [Mother] has no family in Indiana. While [Father]has family in Indiana they are not close and do not regularly interact with the children.

***

12. [Mother] has historically been the primary care giver for the children and has regularly attended to their mental and physical healthcare, as well as educational needs. Further, [Mother] has researched the children's educational options and circumstances upon relocation, and has a defined transition plan.

13. Ultimately, [Father] has failed to establish that the relocation is not in the children's best interest.

Appealed Order p. 1-3.

On January 24, 2017, Father filed a motion to stay the trial court's order pending appeal. On January 30, 2017, the trial court denied the motion to stay, observing that the trial court had been "notified by [Mother] that she has begun implementing the relocation and has already enrolled the children in school in

the State of California and they are attending classes at this time. . . . [The] Court does not find it to be in the children's best interest to interrupt their current educational activities awaiting resolution of the Appellate process." Appellant's App. p. 13. Father now appeals.

## Discussion and Decision

[13] Father appeals the trial court's order permitting Mother to relocate with the children. In reaching its decision, the trial court entered findings and conclusions, our review of which is well settled:

> Pursuant to Indiana Trial Rule 52(A), we do not "set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Where, as here, the findings and conclusions are entered sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial.

*Miller v. Carpenter*, 965 N.E.2d 104, 108-09 (Ind. Ct. App. 2012) (internal citation and some internal quotation marks omitted).

[14] Our Supreme Court has "expressed a preference for granting latitude and deference to our trial judges in family law matters . . . because of trial judges' unique, direct interactions with the parties face-to-face." *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011) (internal citations and quotation marks omitted). Consequently, we do not substitute our judgment for that of the trial

court if evidence and legitimate inferences therefrom support the trial court's judgment; this serves the interests of finality in custody matters. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

[15] If a parent intends to relocate, she must file a notice of her intent to move with the court that issued the custody or parenting time order already in place. Ind. Code § 31-17-2.2-1(a). In response, the non-relocating parent may file a motion seeking a temporary or permanent order to prevent the relocation of the child. I.C. § 31-17-2.2-5. When such a motion is filed, a statutory burden-shifting analysis must be undertaken by the trial court:

> (c) The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason.

> (d) If the relocating individual meets the burden of proof under subsection (c), the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child.

*Id.*

[16] There are a number of statutory factors that must be considered by the trial court that are set forth in Indiana Code section 31-17-2.2-1(b), but those factors apply only when the trial court must determine whether to modify a custody, parenting time, grandparent visitation, or child support order. Here, no such modifications are at issue; as such, we need not consider the factors set forth in that statute. Instead, we must simply determine whether the trial court properly

determined that Mother met her burden of proving that the relocation is made in good faith and for a legitimate reason and, if so, that Father failed to meet his burden of proof that the proposed relocation is not in the children's best interests.

[17] There is no real dispute as to whether Mother proposed the relocation in good faith. At no point does Father assert or imply that she had underhanded motives or unspoken reasons for the move, and indeed, the record would not support such an allegation. We find no evidence causing us to question the trial court's finding that the proposed relocation is being made in good faith.

[18] Father focuses, instead, on whether the trial court erroneously determined that Mother had a legitimate reason for the relocation. The trial court found that Mother had multiple reasons to seek the relocation, and each of these findings has support in the record.

1. Mother wishes to live with her parents. *See* Tr. Vol. II p. 46, 70.
2. Mother wishes to provide assistance to her parents in maintaining their residence and independence. *See id.* at 46-47, 72, 155.
3. Mother wishes to take advantage of free live-in child care. *See id.* at 47.
4. Mother hopes to take advantage of expanded job opportunities. *See id.* at 49-50, 68, 70-71, 73.
5. Mother wishes, both for herself and for the children, to live near her extended family. *See id.* at 46-47.
6. Mother hopes to use proceeds from the sale of her home in Indiana to repay her parents. *See id.* at 69-70.

As there is evidence supporting each of these findings in the record, we must simply determine whether these findings support the trial court's conclusion that Mother had one or more legitimate reasons for the relocation.

[19] Mother's reasons for moving can be separated into two basic categories: flexibility and finances; and family. With respect to flexibility and finances, it is undisputed that in Indiana, Mother has no family support and has been the children's primary caregiver with little to no help with childcare, extracurricular activities, and the day-to-day job of raising happy, healthy children. As a result, she has had to take jobs for which she is overqualified and underpaid, so that she retains the flexibility she needs as primary caregiver. Unless a desirable job becomes available at a distance from her parents, Mother and the children plan to move in with them. In such a scenario, Mother would have live-in, free childcare. Furthermore, Mother's parents, as well as her sister and her family, would be available as support if something unexpected, such as a child illness, came up. With this support, Mother will be free to look for jobs that may offer less flexibility but higher income.

[20] With respect to family, Mother's parents are aging. And while they are currently able to live independently and maintain their house and lawn, they will soon reach a point when they will need more help. Currently, Mother's sister—who has five children of her own—bears the sole responsibility for providing help to their parents. Mother's presence in California would help both her parents and her sister during the years when it will be most welcome.

Additionally, the children would benefit from proximity to an extended family that is undisputedly close, supportive, and loving.

[21] We find that the record supports the trial court's conclusion that these reasons, taken as a whole, are legitimate reasons for the proposed relocation. *See Gold v. Weather*, 14 N.E.3d 836, 842-43 (affirming trial court's conclusion that Mother's relocation, which occurred so she could be closer to her immediate and extended family, was done for a legitimate purpose). We acknowledge Father's arguments that Mother does not *yet* have a job, that she cannot prove definitively that her income will increase upon relocation, and that her parents do not *yet* need assistance. Notwithstanding all of these unknowns, however, what *is* known is that in Indiana, Mother is parenting the children with no support; in California, she would have extensive family support, including free child care; in California, she would be able to help with the inevitable decline of her aging parents; and in California, her children would have a large and supportive family nearby, including cousins their own ages. We find that the trial court did not err by finding that these are legitimate, good faith reasons for the proposed relocation.

[22] As such, the burden shifts to Father to prove that the relocation would not be in the children's best interests. The trial court found that Father opposed the relocation for a number of reasons:

    i)     he fears it will impair his relationship with the children;

    ii)    he is without the financial means to travel to California;

iii) the children will be denied close contact with he and his family; and,

iv) [Mother] seeks to impede his relationship with the children.

Appealed Order p. 2. The understandable crux of all these reasons for Father's opposition is a concern that the relocation will hamper his ability to maintain a close relationship with the children. That is a fair and worthy concern, and is often an unfortunate side effect of a parental relocation.

[23] Even while the children are living in Indiana, however, Father's distance from their home has caused him to be unable to be a daily presence in their lives, at their school, and at their extracurricular activities. We intend to cast no aspersions on his decision to move for reasons of employment, but one result of that move—even if the move was the right thing to do—was a lessening of his presence in their lives. The children are used to having much of their contact with Father in their nightly phone calls, and that will continue after they move to California. And while they will lose their weekly hours with him on Thursdays and bimonthly weekends with him, the children will be able to spend ten weeks with him during the summer, as well as time during spring and winter breaks from school. Indeed, the amount of parenting time he has with the children will remain the same—it will just occur in large, discrete blocks of time rather than smaller blocks on a regular basis. Of course this is not ideal, but that does not mean that the move is not in their best interests.

[24] Mother has promised to help with the cost of plane tickets and to abate Father's child support obligation, which will ease any financial strain on Father. She has offered more summer parenting time to him than he would otherwise be entitled, and has promised daily phone or Facetime contact with the children. Mother and Father have a contentious relationship, and we acknowledge, as did the trial court, that at times she has impeded his relationship with the children. But there is no evidence of any such impediment since the trial court entered an order in a 2013 contempt proceeding. And we note, as did the trial court, that it is readily apparent from the record in this case that the contentiousness in the relationship, as well as the parties' difficulties with communication, has been a two-way street for which both parents must share blame. That said, of course if Mother fails to comply with the terms of the trial court's orders in the future, Father would again be free to file contempt proceedings. But at this time, there is no evidence supporting Father's concern that Mother will impede his relationship with the children upon relocation.

[25] As noted above, the relocation will offer the children a close and supportive extended family network. They will attend good schools with their cousins. They will be cared for by grandparents and their aunt and uncle, as well as the continued care provided by Mother. They will lose regular in-person contact with their Father, but will still be able to maintain a relationship with him over the phone every day and in person during school breaks. Given this record, we do not find that the trial court erred by concluding that Father did not meet his burden of proving that the relocation would not be in the children's best

interests. Father's arguments to the contrary amount to a request that we reweigh evidence and reassess witness credibility, which our standard of review does not permit.

[26] The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.