**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Joe Duepner
Duepner Law LLC
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Briana King,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Matthew King,<br>*Appellee-Respondent* | November 8, 2019<br><br>Court of Appeals Case No.<br>19A-DC-1098<br><br>Appeal from the<br>Hamilton Superior Court<br><br>The Honorable<br>J. Richard Campbell, Judge<br><br>Trial Court Cause No.<br>29D04-1705-DC-4223 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Two months after the trial court dissolved the marriage of Briana King ("Mother") and Matthew King ("Father"), Mother filed a notice of intent to

relocate to Mississippi with the parties' two children. The trial court found that Mother's reasons for moving to Mississippi were not legitimate. We affirm the trial court.

## Facts and Procedural History

[2] Mother and Father got married in 2013 and have two daughters, C.K. (born in October 2013) and A.K. (born in March 2015). Mother filed for divorce in January 2018. On October 29, 2018, the parties entered into a settlement agreement, which provided that the parties would share legal custody of the children with Mother having primary physical custody and Father having parenting time according to the Indiana Parenting Time Guidelines plus "twenty (20) additional parenting time overnights . . . such as the parties shall agree." Appellant's App. Vol. II p. 20. Also according to the settlement agreement, Father would pay $259 per week in child support. The trial court approved the settlement agreement and entered a decree of dissolution of marriage on November 5, 2018.

[3] Two months later, on January 8, 2019, Mother filed a notice of intent to relocate about 700 miles away to Madison, Mississippi, where her best friend lives. According to the notice, Mother had "job opportunities in MS that w[ould] increase her yearly salary" and her best friend would provide "child care free of charge." *Id.* at 37. Father objected to Mother's notice of intent to relocate, explaining that he regularly exercises parenting time with the children and is actively involved in their lives, that Mother's relocation would

"substantially interfere with his parenting time," and that both Father's and Mother's families live in central Indiana. *Id.* at 40. Father also noted that he believed the real reason Mother wanted to move to Mississippi was to be near her boyfriend Brock.

[4] At the March 2019 hearing, Mother testified that the "main reason" she wanted to move to Mississippi was for "[h]elp with my kids." Tr. p. 7. She acknowledged that her brother and parents live in central Indiana but said that she cut off a relationship with her parents after she filed for divorce and that she and the children had not seen them in about a year. *See id.* at 38. Mother said that if the trial court allowed her and the children to move to Mississippi, they would live rent-free with her best friend for about a year, then she would buy her own house. Mother explained that she and the children had visited Mississippi three times—in August 2018 as well as over "Thanksgiving and Christmas breaks" in 2018—and that her children got along well with her best friend's children. *Id.* at 11, 32. Mother testified that she met Brock on her August trip to Mississippi and that they got engaged on her "Christmas break" trip. *Id.* at 36. However, Mother claimed that Brock was not "any part of the reason why [she] wanted to move to Mississippi." *Id.* at 13; *see also id.* at 42, 44. In fact, she said that she "d[idn't] plan on marrying him right now." *Id.* at 37. When asked if she was ever going to move in with Brock, Mother responded that she would "if" they got married. *Id.* at 42. Mother noted that she and Father were engaged for five years before they got married.

[5] Mother, a nurse practitioner, testified that another reason she wanted to move to Mississippi was for "a better job." *Id.* at 36. Mother said that she earned $1,860 a week (or $46.50/hour, *see* Appellant's Br. p. 6) in Indiana and had applied for higher-paying jobs in Mississippi in July 2018—before she and Father entered into the settlement agreement—and had gotten two job offers, one for $65/hour and another for $75/hour. Mother, however, did not present any documentary evidence to support these offers, and she could not remember the name of one of the companies that had offered her a job. Mother explained that one of the offers was for a "telemedicine" position. Tr. p. 29. Mother acknowledged that she had not researched any "telemed" positions in Indiana. *Id.* at 36-37. Mother testified that she had a nanny for the children for about three years and that she paid the nanny $460/week. She said that if she moved to Mississippi, her best friend would provide free childcare, saving her approximately $1,800 per month. Finally, Mother testified that if the trial court did not allow her to move with the children to Mississippi, she would not go.

[6] Father testified that he did not want the children to move to Mississippi because of the distance, the impact it would have on his parenting time, and the fact that both his family and Mother's family live in central Indiana. Father said that he wanted more time with the children but that Mother did not always give him extra time. *See, e.g., id.* at 50-51, 64, 76-77. Father explained that his parents live in Avon and that they spend a lot of time with the children, which Mother herself acknowledged. *Id.* at 35. In addition, Father testified that he believed Mother was "really going to Mississippi to be with" Brock. *Id.* at 67. Father

said that before he and Mother entered into the settlement agreement in October 2018, Mother had never discussed with him the possibility of her and the children moving to Mississippi. *Id.* Finally, Father's mother, a registered nurse who typically works three ten-hour shifts a week, testified that Mother had not asked her for any help with the children since the divorce even though she had offered to help.

[7] In April 2019, the trial court issued an order denying Mother's request to relocate to Mississippi with the children. The order provides, in relevant part:

> 11. Mother failed to prove that her reasons for relocating as stated in her Notice of Intent to Relocate [were] legitimate, because it appears that the actual reason for wanting to relocate is her recent engagement.
>
> 12. Engagement and re-marriage can be a very legitimate reason for a parent to relocate, but Mother played down that purpose in her testimony. Mother testified that her engagement would last for at least two years. For that reason, her intent to remarry is not a legitimate reason to relocate at this time, even if she had raised it as a reason.
>
> 13. The Court finds that Mother failed to prove that opportunities for a higher paying job and free child care are legitimate reasons to relocate. Moreover, Mother's engagement is not [a] legitimate reason primarily because of the unsettled date of her proposed marriage.
>
> 14. Since Mother testified that she would not be relocating if the Court denies her request to take her children, the Court does not need to decide what would be in the best interest of the children for custody.

Appellant's App. Vol. II pp. 75-76.

Mother now appeals.

# Discussion and Decision

We first note that Father did not file an appellee's brief. When the appellee fails to submit a brief, we will not develop an argument on his behalf but, instead, we may reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *GEICO Ins. Co. v. Graham*, 14 N.E.3d 854, 857 (Ind. Ct. App. 2014).

Mother contends that the trial court erred in denying her request to relocate to Mississippi with the children. On appellate review of judgments with findings and conclusions, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We do not reweigh the evidence or assess the credibility of witnesses, and the evidence should be viewed most favorably to the judgment. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). In conjunction with Trial Rule 52, there is a longstanding policy that appellate courts should defer to the determination of trial courts in family-law matters. *D.G. v. S.G.*, 82 N.E.3d 342, 348 (Ind. Ct. App. 2017), *trans. denied*. As our Supreme Court has explained:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best*, 941 N.E.2d at 502.

[11] Mother argues that the trial court erred in finding that she did not have good-faith and legitimate reasons for moving to Mississippi. A parent intending to relocate with a child must prove "that the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(e) (formerly subsection (c)). If the relocating parent meets that burden of proof, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." *Id.* at (f) (formerly subsection (d)).

[12] No explicit criteria exist to determine whether a relocation is made in good faith and for a legitimate reason; however, "more than a mere pretext" is required. *T.L. v. J.L.* 950 N.E.2d 779, 787 (Ind. Ct. App. 2011), *reh'g denied.* Relocating for financial reasons, for employment opportunities, and to be near family are commonly acceptable reasons to support good faith and legitimacy. *Id.* at 787-88; *see also Gold v. Weather*, 14 N.E.3d 836, 842 (Ind. Ct. App. 2014), *trans. denied*.

[13] Here, the trial court found that Mother's stated reasons for moving to Mississippi—for a higher-paying job and free childcare—were not legitimate. Mother testified that she had applied for jobs in Mississippi in July 2018, while the divorce was pending and before the parties entered into the settlement agreement. Yet, Mother never told Father about wanting to move with the children to Mississippi. Accordingly, when the parties entered into the settlement agreement in October, Father had no idea about Mother's plans. And when the trial court approved the settlement agreement and dissolved the parties' marriage a couple days later, it had no idea either. *See* Ind. Code § 31-17-2.2-2 (noting that if a party provides notice of relocation at an initial hearing to determine custody, the court may consider the relocation factors in its initial custody determination). Although Mother testified that she had received two job offers in July 2018, she didn't present any documentary evidence of those offers or that they were still open some nine months later. In addition, Mother admitted that she hadn't searched for any "telemed" positions in Indiana. As for childcare, Mother claimed that her best friend would provide free childcare, saving her approximately $1,800 per month. Notably, however, Mother did not claim that she was unable to afford her current childcare arrangement. Indeed, when the parties entered into the settlement agreement in October, they attached a Child Support Obligation Worksheet, which established Father's child support at $259 per week. On this worksheet, Mother's childcare expenses are listed at $450 per week.

[14] Based on this evidence, the trial court found that although these could be good-faith and legitimate reasons, they were pretext for Mother's real reason for wanting to move to Mississippi—Brock. However, the trial court found that this reason was not legitimate because of the "unsettled date of [their] proposed marriage." That is, Mother testified that she "d[idn't] plan on marrying [Brock] right now," didn't "plan on moving in with him" anytime soon, and would move in with him "if" they got married. Tr. pp. 37, 39, 42. Accordingly, the trial court found that although "[e]ngagement and re-marriage can be a very legitimate reason for a parent to relocate," it wasn't in this case. It is not for us to second-guess the trial court's assessment of Mother's credibility or to reweigh the evidence. We therefore affirm the trial court.

[15] Affirmed.

Riley, J., and Bradford, J., concur.