## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2017, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael A. Wilkins
Broyles Kight & Ricafort, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Stephen P. Rothberg
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lori A. Spang,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Timothy R. Spang,<br>*Appellee-Respondent.* | February 13, 2017<br><br>Court of Appeals Case No.<br>02A03-1608-DR-1876<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Lori Morgan, Pro Tem Judge<br><br>Trial Court Cause No.<br>02D07-1107-DR-549 |

**Robb, Judge.**

# Case Summary and Issues

[1] Lori Spang ("Mother") filed a notice of intent to relocate from Fort Wayne to Indianapolis with her twelve-year-old daughter, E.S. ("Child"). Timothy Spang ("Father") objected to the move and filed an objection to relocation and a petition for modification of custody, which the trial court granted following an evidentiary hearing. Mother now appeals and raises three issues for our review: (1) whether the trial court abused its discretion in failing to consider a statutory factor; (2) whether Father met his burden of proof to demonstrate the proposed relocation was not in Child's best interest; and (3) whether the trial court abused its discretion by improperly considering Mother's intention to relocate in determining the best interests of Child. Concluding the trial court did not abuse its discretion and Father met his burden of proof, we affirm.

# Facts and Procedural History

[2] Mother and Father divorced in September 2012, and pursuant to the parties' marital settlement agreement, they were each granted joint legal custody of their two children.[1] Mother and Father were also granted equal parenting time with their children.

---

[1] The parties' oldest daughter, Sydney Spang, is now eighteen years old. Mother and Father's custody modification and relocation dispute is limited to Child.

[3]     At all times since their divorce, Mother and Father have lived in Allen County, Indiana. Father resides in the parties' former marital residence and Mother owns a home about three miles away from Father's home. Father is employed as a business development manager for Precise Manufacturing and Mother is employed with Southwest Allen County Schools. Mother and Father each exercise equal parenting time with Father generally exercising parenting time on Wednesdays, and every other Thursday and weekend.

[4]     Both Mother and Father have extended family in Fort Wayne and the surrounding area. Father's mother, siblings, and cousins reside in North Manchester, Indiana. Mother's family owns a cottage at Lake George, and Mother would often take her children to the lake during and after the parties' marriage. Mother's and Father's extended family are involved in their children's lives on an almost weekly basis.

[5]     In February 2012, Mother began a relationship with Eric Monesmith. Mr. Monesmith is an orthopedic surgeon and lives in Indianapolis with his four children. Mr. Monesmith also owns a cottage neighboring that of Mother's family's cottage at Lake George. During the summer, Mr. Monesmith and his family and Mother and her children often spend a considerable amount of time at Lake George. In 2015, Mr. Monesmith and Mother became engaged. Mother and Mr. Monesmith planned their wedding for July of 2016 to create the least amount of disruption in their children's lives as Sydney would matriculate to Indiana University and Child would begin middle school in the

fall. Following their wedding, Mother desired to move to Indianapolis with Mr. Monesmith where she would be a homemaker.

[6] On November 12, 2015, Mother filed a verified notice of intent to relocate to Indianapolis; in response, Father filed an objection to relocation and a petition for modification of custody. On May 27, 2016, the trial court held an evidentiary hearing at which Father, Mother, Mr. Monesmith, and Sydney testified. On July 25, 2016, the trial court issued its findings of fact and conclusions of law denying Mother's petition to relocate with Child and granting Father's petition to modify custody of Child. The trial court found, in relevant part, as follows:

**FINDINGS OF FACT**

* * *

9.      Since the parties' dissolution, both Mother and Father have been equal participants in the care and supervision of their children. It is undisputed that both children are intelligent, excellent students, well-adjusted, well-behaved, and deeply bonded to both their Mother and Father.

10.     Both children enjoy a regular routine in the homes of their Mother and their Father who happen to live in Fort Wayne just minutes from one another.

* * *

13.     [Child] is currently Twelve (12) years old and will be graduating from Whispering Meadows Elementary, Fort Wayne to Summit Middle School, Fort Wayne in August 2016. The parties do not dispute that the majority of [Child's] friend [sic] will be attending a different school if

she would remain with Father. The Court finds that should [Child] relocate to Indianapolis with Mother, [Child] will also be attending a different school in a different city with different friends.

14. [Child] has been involved in extracurricular activities including lacrosse, volley ball [sic], and cheerleading camps. Although the frequency in in [sic] dispute, the Court finds that both parents have participated in their children's education and extracurricular activities.

15. The Court finds that both parents have largely cooperated with respect to the children's medical care, education, and religious instruction. It is not disputed that Mother attends church with the children more frequently than Father. The biggest contrast between Mother and Father concerns certain rules and boundaries to [sic] which the Court will address further herein.

16. [T]he Court finds Father has been granted flexibility with his work hours to accommodate getting children to and from school.

17. The Court finds that at the time of the proceedings, Mother was employed in the same Fort Wayne school district as [Child]. However, Mother and [Mr. Monesmith] plan for her to be a homemaker. Mother plans on renting or selling her home in Fort Wayne when she moves to Indianapolis.

18. The Court finds that Mother'[s] position at trial was contrary to her sworn deposition testimony. During her deposition, Mother testified that she would not relocate to Indianapolis if the Court did not permit the relocation. At trial, when confronted with the hypothetical of this Court denying the relocation Mother testified that "That hypothetical is so far beyond my comprehension I don't know how I can give a hypothetical answer to that." Further, the Court finds that Mother and [Mr. Monesmith] were less than clear with each other as to how they would handle the alternative of this Court denying the relocation.

The Court finds Mother now intends to move to Indianapolis regardless of the Court's decision.

19. The Court finds that both Mother and Father have extended family in Fort Wayne . . . .

20. At all times relevant to these proceedings, both Mother, [Mr. Monesmith], and their children would spend most of their summers at Lake George with Mother's family and [Mr. Monesmith's] family. Lake George is approximately Fifty-Nine (59) miles North of Father's residence in Fort Wayne. [Mr. Monesmith's] home is One Hundred Eleven (111) miles South of Father's residence.

21. The Court finds that child has a relationship with [F]ather's family and spends time with them on at least a monthly basis and sometimes weekly. Father's mother would often spend time with [Child] during Father's parenting time during the summer when Father was at work.

22. The Court finds that Mother has researched three (3) schools in Indianapolis of the same and similar quality to Summit Middle School, Fort Wayne.

23. The Court finds that Mother and Father have different parenting styles. Father is more regimented with homework and bedtime routines and Mother is more relaxed as far as implementing a routine and schedule for the children.

24. The Court finds that . . . the Nineteen (19) year old son of [Mr.] Monesmith, [sic] has been provided alcohol in the presence of [Mother] and with the blessing of [Mr. Monesmith]. The Court also finds that [Mr.] Monesmith has provided alcohol to other under aged friends of [his son]. It is not disputed that [his son] has recently been arrested and convicted of operating while intoxicated.

* * *

26. The Court finds that Mother and [Mr. Monesmith] have knowingly and intentionally provided alcohol to minors, including the parties' child Sydney, in their home and at the lake cottage. The Court finds that Mother and [Mr. Monesmith] have endorsed the use of alcohol by minors, including the parties' Eighteen (18) year old daughter, Sydney.

27. The Court finds that Father does not condone the provision of or consumption of alcohol by minors.

28. The Court finds that [it] is not in the best interests of the parties' minor children to be offered alcohol or to consume alcohol . . . .

* * *

## CONCLUSIONS OF LAW

* * *

33. Considering the parties [sic] stipulation, the Court concludes that Mother's relocation is made in good faith and for a legitimate reason . . . .

34. Thus, the burden shifts to Father to show the relocation of [Child] is not in her best interest.

* * *

43. The Court concludes the distance involved in the proposed change of residence of [Child] would prevent Father from exercising the current shared parenting plan.

44. The Court concludes that Mother has greater flexibility considering that Father is a full time employee . . . and Mother plans on being a homemaker. Mother has the greater ability to travel for school events and extracurricular activities given the fact she will not be working.

45. The Court concludes that particularly during the school year Father offers a regimented routine for homework and

bedtimes. The Court concludes that given his influence, the parties' children have excelled in their academics. The Court concludes that Father's influence over [Child's] academics would be less significant.

46. The Court concludes that given the fact that Mother and [Mr. Monesmith] are frequently at their lake cottage with Mother's family . . . the preservation of [Child's] relationship with her maternal family will not be impacted. [Child] will likely see her maternal family no more or no less should the child remain in the primary care of her Father.

47. The Court concludes that [Child's] relationships with Father and her paternal family would be impacted should the Court grant the relocation. Instead of [Child] being involved with her extended paternal family on monthly if not weekly basis, [Child] would become a part of Mother and Mr. Monesmith's daily life, only with the exception of weekend and holiday parenting time with Father from which [Child] has contact with her paternal family.

48. The Court concludes that the lax attitude about provision of alcohol to minors is another factor that affects the best interests of [Child]. Notwithstanding the fact that it is against Indiana Law, the Court concludes that Mother and Mr. Monesmith have failed to provide appropriate care and supervision for the parties' children while under their care by either directly or indirectly exposing them to minors consuming alcohol. The Court further concludes that Mother is not credible with respect to her beliefs concerning minors consuming.

49. The Court concludes that the proposed relocation of [Child] and the resulting school of attendance provides no advantage or disadvantage to [Child].

50. After considering all relevant factors, including the factors listed at I.C. 31-17-2-8 and I.C. 31-17-2.2-1(b), the Court finds that the relocation . . . is not in [Child's] best interests.

51.   [T]he Court finds that the modification [of] primary
      physical custody to Father is in the best interests of the
      minor child . . . .

Appellant's Appendix at 13-21 (internal citations omitted).  Mother now

appeals.  Additional facts will be added as necessary.

# Discussion and Decision

## I.  Standard of Review

In this case, the trial court entered findings of fact and conclusions of law.

Pursuant to Indiana Trial Rule 52(A), our court will "not set aside the findings

or judgment unless clearly erroneous, and due regard shall be given to the

opportunity of the trial court to judge the credibility of the witnesses."  *D.C. v.*

*J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012).  Considering only the evidence most

favorable to the trial court's judgment and all reasonable inferences derived

therefrom, we will find clear error only if the evidence, either directly or by

inference, fails to support the findings, or if the findings fail to support the

judgment.  *Paternity of X.A.S. v. S.K.*, 928 N.E.2d 222, 224 (Ind. Ct. App. 2010),

*trans. denied*.

In addition, we review custody modifications for an abuse of discretion with a

preference "for granting latitude and deference to our trial judges in family law

matters."  *Wilson v. Myers*, 997 N.E.2d 338, 340 (Ind. 2013) (citation omitted).

"[A]ppellate courts 'are in a poor position to look at a cold transcript of the

record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C.*, 977 N.E.2d at 956-57 (citation omitted). Accordingly, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

## II. Failure to Consider a Statutory Factor

[9] Mother claims the trial court abused its discretion in failing to evaluate the proper statutory factors for a modification of custody when one party intends to relocate. Specifically, Mother alleges the trial court failed to consider the effects of a modification of custody on Child's relationship with Mother and her soon-to-be step-family in Indianapolis. We disagree.

[10] Indiana Code section 31-17-2.2-1(b) provides that when a party moves to modify custody in response to the proposed relocation of the other parent, the trial court must take these factors into consideration:

> (1) The distance involved in the proposed change of residence.
>
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time . . . .
>
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

"Other factors affecting the best interest of the child" include, among other things, the factors listed in Indiana Code section 31-17-2-8. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008). These factors include the child's age and sex; the parents' wishes; the child's wishes, with the wishes of children fourteen years or older being given more weight; the child's relationship with parents, siblings, and any other person affecting the child's best interests; and the child's adjustment to home, school, and the community. Ind. Code § 31-17-2-8. When one parent is relocating, it is not necessary for a court to find a substantial change in one of these "other factors" before modifying custody. *See Baxendale*, 878 N.E.2d at 1257.

[11] Mother contends the trial court abused its discretion by failing to consider all of the factors in Indiana Code section 31-17-2-8, as evidenced by the absence of a finding of fact regarding the impact of a custody modification on Child's relationship with Mother and her new family. First, we note a trial court must consider each statutory factor, but it is not required to make a finding on each

factor. *Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008) (noting that "at a minimum, there must be evidence in the record on each of the factors listed . . .").

[12] Second, the trial court's findings of fact and conclusions of law were thorough and detailed, leaving us convinced the trial court considered all relevant factors. Regarding Mother's contention the trial court failed to consider Child's familial relationships or the effect that custody modification would have on them, the trial court specifically noted "[b]oth children are intelligent, excellent students, well-adjusted, well-behaved, and deeply bonded to both their Mother and Father." Appellant's App. at 2. The trial court further found both parents were active participants in Child's education and extracurricular activities, both parents have extended family in the Fort Wayne area with whom Child has a close bond, and Child and Mother's new family often spend a considerable amount of time at Lake George in the summer. Moreover, the trial court concluded that Mother, given her stated intention of becoming a homemaker, would have more opportunities to attend extracurricular activities and sporting events in Fort Wayne than Father would in Indianapolis. Finally, the trial court determined the impact of custody modification on the relationships would be more adverse to Father and his extended family than to Mother and her extended family given Mother's frequent trips to Lake George in the summer and greater amount of free time to travel to Fort Wayne.

[13] The record establishes the trial court heard evidence concerning Child's familial relationships and the trial court's findings reflect those considerations.

Although Mother may disagree with the amount of attention the trial court gave to these matters in its order, it was within the sound discretion of the trial court to place greater significance on certain evidence and statutory factors. We are satisfied the trial court considered all relevant statutory factors.

# III. Father's Burden of Proof

[14] Mother also contends Father failed to meet his burden of proof. The parties stipulated Mother's proposed relocation was in good faith and for a legitimate reason; therefore, the burden shifted to Father to prove the relocation was not in Child's best interest. *See* Ind. Code § 31-17-2.2-5(d). Here, Mother contends the trial court abused its discretion in concluding Father met this burden. However, given our standard of review and the facts and circumstances of the present case, we cannot agree.

[15] Mother begins by attacking five of the trial court's findings and asserting they are insufficient to prove relocation was not in Child's best interest. The findings Mother takes issue with are:

> 9. Mother and Father have been equal participants in the care and supervision of their children.
>
> * * *
>
> 14. [T]he Court finds that both parents have participated in their children's education and extracurricular activities.
>
> 15. The Court finds that both parents have largely cooperated and agreed with respect to the children's . . . religious instruction. It is not disputed Mother attends church with the children more frequently than Father.

16. [T]he Court finds that Father has been granted flexibility with his work hours to accommodate getting children to and from work.

* * *

45. The Court concludes that particularly during the school year Father offers a regimented routine for homework and bedtimes. The Court concludes that given his influence, the parties' children have excelled in their academics.

Appellant's App. at 14 -15, 20. Mother does not contest whether the evidence supports the findings, and largely agrees that it does; instead, Mother argues these findings "had little, if anything, to do with [Child's] best interest or were actually contrary to her best interest." Brief of Appellant at 18.

[16] First, we note much of Mother's argument surrounding Father's burden of proof is a request for us to reweigh the evidence, which we cannot do. We are constrained to determine whether the evidence supports the findings and whether the findings support the judgment of the trial court. *Paternity of X.A.S.*, 928 N.E.2d at 224. Second, Mother has cherry-picked certain findings with which she disagrees and asserts that, taken alone, they are insufficient to support the trial court's determination that relocation is not in Child's best interest. However, we believe the trial court has made sufficient findings to support its conclusion that Father met his burden of proof.

[17] The evidence favorable to the trial court's decision supports its conclusion that remaining in Fort Wayne with Father was in Child's best interest. In addition to the five findings stated above, there was no evidence Child had performed

poorly in school; in fact, the evidence and findings demonstrate Child excelled academically in Fort Wayne. Regardless of whether Child would attend a new school whether she stayed in Fort Wayne or relocated to Indianapolis, the trial court found Child excelled in her current setting, and that Father's influence and regimented routine was a large part of that success. Further, there was evidence that Child was heavily involved in extracurricular activities and athletics in Fort Wayne such as lacrosse, volleyball, and cheerleading. In addition to Child's education and extracurricular activities, the trial court found Father's and Mother's extended family live in or near Fort Wayne and are closely bonded with Child. Father's mother, siblings, and cousins live near Fort Wayne, mostly in North Manchester, with Father's mother often providing some care for Child during the summer. Mother's family also frequently spends time at their cottage at Lake George during the summer. With Mother's proposed relocation to Indianapolis, the trial court found Child's ability to maintain a close relationship with Father and his extended family would be negatively impacted. Given the facts and circumstances of the present case, the trial court could reasonably determine that Mother's proposed relocation was not in Child's best interest. *See Baxendale*, 878 N.E.2d at 1258 (child's school performance, proximity to his family members who provided temporary care, and established athletic and extra-curricular activities all supported trial court's decision to change custody to allow child to remain in Indiana with father when mother relocated to Minnesota); *Swadner v. Swadner*, 897 N.E.2d 966, 977 (Ind. Ct. App. 2008) (noting that although mother presented evidence that could have supported a decision that relocation would be in the children's best

interest, where father presented evidence that supported the opposite conclusion, the trial court's decision in favor of father was not an abuse of discretion).

[18] In addition to these findings, the trial court also found Mother and Mr. Monesmith knowingly and intentionally provided alcohol to minor children. The parties' eighteen-year-old daughter, Sydney, testified Mother and Mr. Monesmith have both offered her alcohol on more than one occasion. Mr. Monesmith oldest son has also offered her alcohol and she has witnessed Mr. Monesmith's fifteen-year-old son consuming alcohol as well. By contrast, Father testified he does not permit underage drinking in his household. Mother argues that whether she and Mr. Monesmith's older children were allowed "to drink small amounts of alcohol on limited occasions under controlled circumstances" has no relevance to her ability to parent Child, and that this finding could not possibly outweigh the other evidence in Mother's favor. Br. of Appellant at 25.

[19] First, there is no indication from the trial court's findings of fact or conclusions of how heavily it weighed this evidence, or that it somehow, taken alone, outweighed all evidence favorable to Mother. Second, the finding is relevant to Child's best interest and the trial court did not abuse its discretion in making this finding. *See Baxendale*, 878 N.E.2d at 1258 (noting evidence of a parent's drug or alcohol use can be relevant to a child's best interest). Here, the evidence demonstrates Mother and Mr. Monesmith have a lax attitude towards minors consuming alcohol. Regardless of whether Child has actually been

offered or consumed alcohol, the trial court could make the reasonable inference Mother's lax attitude toward alcohol consumption with Sydney and Mr. Monesmith's children would continue with Child, and that underage consumption of alcohol is not in Child's best interest.

[20] Finally, Mother argues a modification in custody resulting in Child remaining in Fort Wayne would cause far more disruption in Child's life than permitting her to relocate to Indianapolis with Mother. The evidence recited by Mother in favor of her argument was presented to the trial court, which was entitled to evaluate and weigh it. Mother essentially requests that we reevaluate this evidence and give it greater significance and weight, which we cannot do. *Paternity of X.A.S.*, 928 N.E.2d at 224.

[21] The trial court heard the parties' testimony and examined the evidence, ultimately finding that a relocation would be contrary to the Child's best interests. The trial court's findings support this judgment; therefore, it did not fail to hold Father to his burden of proof.

## IV. Mother's Intention to Move to Indianapolis

[22] Finally, Mother argues the trial court abused its discretion by improperly considering Mother's intention to move to Indianapolis, regardless of the outcome of the relocation determination. The trial court's findings of fact state,

> 18. The Court finds that Mother's position at trial was contrary to her sworn deposition testimony. During her deposition, Mother testified that she would not relocate to Indianapolis if the Court did not permit the relocation. At

trial, when confronted with the hypothetical of this Court denying the relocation Mother testified that "That hypothetical is so far beyond my comprehension I don't know how I can give a hypothetical answer to that." Further, the Court finds that Mother and [Mr. Monesmith] were less than clear with each other as to how they would handle the alternative of this Court denying the relocation. The Court finds Mother now intends to move to Indianapolis regardless of the Court's decision.

Appellant's App. at 15. Mother disputes whether the evidence supports this finding and whether it was proper for the trial court to consider Mother's intention.

[23]     At a deposition, Father's counsel asked Mother about her intention to move even if the trial court rendered an unfavorable decision and Child remained in Fort Wayne. The colloquy went as follows:

> [Counsel]: [W]hat do you plan to do if the decision is made that [Child] needs to stay in Allen County[,] what are your plans?
>
> [Mother]: I'll do whatever I have to do to be with my daughter.
>
> [Counsel]: You need to tell me what that means, that you're going to live up here?
>
> [Mother]: If I have to . . . if there is a choice presented to me that if . . . I moved to Indianapolis I don't get to take [Child] then I won't move to Indianapolis.

Transcript at 209. At trial, Mother's answer changed.

[Counsel]: [H]ow do you respond to the hypothetical what if Magistrate Hartzler does not allow [Child] to relocate on a permanent basis to Indianapolis?

[Mother]: That hypothetical is um so far beyond my comprehension I don't know how I could give a hypothetical answer to that.

[Counsel]: Something you thought about?

[Mother]: Of course.

* * *

[Counsel]: If Magistrate Hartzler says you can go to Indianapolis but [Child] stays here what do you think you're going to do?

[Mother]: I don't know how to answer that until it happens if it happens. I I [sic] don't know how I can be the best mother to [Child], the best stepmother to the other children and [Child] and Syd and I know this is about [Child], best wife to [Mr. Monesmith] and do that from a different city.

* * *

[Counsel]: You never agreed to that?

[Mother]: [A]t deposition I said that I would stay in Fort Wayne. I had four months of extremely excruciating thought process about that and . . . I've changed my mind.

[24] Tr. at 200-01, 214. Mother asserts the trial court's inference that she was moving to Indianapolis is not supported by the evidence. We disagree, as Mother clearly stated she "changed her mind" about staying in Fort Wayne in the four months since her deposition, *id.* at 214, and that she did not know how

she could be the best mother or wife "from a different city." *Id.* at 201. A reasonable inference from these statements is that Mother intended to move to Indianapolis.

[25] Mother also asserts, without citation to any authority, that it was improper for the trial court to consider Mother's intent because "[t]here is nothing in the relocation statute that makes a parent's intention to relocate or stay in her present residence if the court refuses to allow the relocation without a change of custody a relevant factor . . . ." Br. of Appellant at 15. Assuming for the purposes of Mother's argument this finding was in error, we conclude the remaining findings still support the trial court's determination that relocation was not in Child's best interest. *See J.M. v. N.M.*, 844 N.E.2d 590, 599 (Ind. Ct. App. 2006) (noting that "[t]o the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment.") (quoting *Lasater v. Lasater*, 809 N.E.2d 380, 397 (Ind. Ct. App. 2004)), *trans. denied*. As stated above, the trial court thoroughly noted all relevant statutory factors listed in Indiana Code sections 31-17-2.2-1(b) and 31-17-2-8. The trial court considered, among other things, Child's education, extracurricular activities, the distance involved in relocation, familial relationships, the feasibility of preserving Father's relationship with Child, hardship and expense for Father to exercise parenting time, and Child's adjustment to her school and Fort Wayne community. These findings, as noted in Section III, support the trial court's determination relocation was not in Child's best interest.

# Conclusion

We conclude the trial court did not abuse its discretion, as it properly considered all relevant statutory factors. Further, the trial court did not fail to hold Father to his burden of proof and its judgment that relocation was not in Child's best interest is supported by the findings. Accordingly, we affirm.

Affirmed.

Kirsch, J., and Barnes, J., concur.