## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2020, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey A. Flores
Madison, Indiana

ATTORNEYS FOR APPELLEE

Justin R. Key
Nicholas S. Veroff
Goldberg Simpson, LLC
Jeffersonville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Jason Mitchell,

*Appellant-Petitioner,*

v.

Kala Burdo,

*Appellee-Respondent.*

December 29, 2020

Court of Appeals Case No.
20A-DR-1211

Appeal from the Scott Circuit Court

The Honorable Vicki L. Carmichael, Special Judge

Trial Court Cause No.
72C01-1608-DR-120

**Mathias, Judge.**

[1] Jason Mitchell (Father) appeals an order from the Scott Circuit Court that granted Kala Burdo's (Mother) request for relocation to Florida and modified physical custody and parenting time as to their two children.

We affirm.

## Facts and Procedural History

Mother and Father were married in Florida in 2006 and have two children together: L.M., born in 2007 and X.M., born in 2014 (Children). The Children were born in Florida and the family lived there until February 2015,[1] when they moved to Scott County, Indiana. Father's father had given them a house, and the couple wanted to "get away" to work on their relationship. Tr. pp. 33–34.

Approximately eighteen months later, in August 2016, the parties filed for divorce. The court subsequently entered an order dissolving the marriage and set a hearing to resolve custody and parenting time. After that hearing, the court, in August 2017, entered an order awarding the parties joint legal custody and awarding Mother primary physical custody "with the understanding and expectation that she may relocate to Florida." Appellant's App. p. 45. Mother had made "it clear" that, if granted custody, she intended to return. *Id.* at 44.

But those plans soon changed. Mother was "promoted through her employment with a significant pay raise and more benefits" and was "not eligible for a transfer to Florida until July 2018." *Id.* at 40. So, in September 2017, Mother filed a petition requesting she be named the primary custodian

---

[1] In 2011 or 2012, the family moved to Indiana, Tr. p. 32, but they returned to Florida a few months later, *id.* at 32–33.

until her scheduled move. Father subsequently filed his own petition to modify custody, and the court[2] held a hearing in April 2018.

[6] On April 17, 2018, the court entered an order in which the parties agreed to share physical and legal custody of the Children, with Father being named the primary custodian. Then, in August, Father filed a petition requesting emergency custody and suspension of Mother's parenting time. Four days later, Mother filed a motion to modify custody and a notice of her intent to relocate to Florida. This period of litigation revolved around a suicide attempt by then-ten-year-old L.M while she was under Father's care. At the time of the incident, L.M. and Mother were "having issues." Tr. p. 48. After a September 2018 hearing, the court ordered Mother's parenting time with L.M. suspended[3] but directed Mother to be "included in therapy sessions" and meetings with the Children's guardian ad litem (GAL). Appellant's App. p. 15. A few months later, the court entered an order reinstating Mother's parenting time with L.M.

[7] In January 2020, Mother filed a motion that included a notice of her intent to relocate to Bradenton, Florida and requested modification of physical custody and parenting time. In the motion, Mother explained that "Florida is where the parties and the [Children] primarily resided during the marriage and is the location where most of the parties' and [C]hildren's relatives reside." *Id.* at 29–

---

[2] In October 2017, Judge Vicki Carmichael was appointed special judge in this case, and she has served in that role throughout the remainder of these proceedings.

[3] Mother's parenting-time schedule with X.M. was "reinstated immediately." Appellant's App. p. 15.

30. Father timely objected to the proposed relocation and filed his own motion to modify custody.

[8] The court held an evidentiary hearing on June 4, where the court heard testimony from Mother, Father, and the GAL. During the hearing, the GAL remarked that Mother "has been wanting to move back to Florida for a long period of time," that "a majority of the family members [are] in Florida," and that she believed relocation was in the Children's best interests. Tr. pp. 47, 49. Twelve days later, the court issued a detailed order granting Mother's request to relocate and modifying physical custody and parenting time. Father now appeals.

## Standard of Review

[9] We review custody modifications for an abuse of discretion. *In re Paternity of J.J.*, 911 N.E.2d 725, 727 (Ind. Ct. App. 2009). The trial court here—at Father's request—entered special findings of facts and conclusions of law, and thus, we will find an abuse of discretion if the court's judgment is clearly erroneous. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). A judgment is clearly erroneous when (1) there is no evidence supporting the findings, (2) the evidence-based findings do not support the judgment, or (3) the trial court applied the wrong legal standard. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009).

[10] In reviewing the court's findings and conclusions, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We consider the evidence in the light most favorable to the

court's decision, and we will not reweigh the evidence or substitute our judgment for that of the trial court. *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011). Such deference is particularly important here as there is a heightened "concern for finality in custody matters," *Baxendale v. Raich*, 878 N.E.2d 1252, 1258 (Ind. 2008), and the trial court—by directly interacting with the parties—was in "a superior position 'to assess credibility and character through both factual testimony and intuitive discernment.'" *Gold v. Weather*, 14 N.E.3d 836, 841 (Ind. Ct. App. 2014) (quoting *Best*, 941 N.E.2d at 502), *trans. denied*.

## Discussion and Decision

[11] Under certain circumstances, such as those here, a parent that intends to relocate must file a timely notice of that intent. Ind. Code §§ 31-17-2.2-1, -3. The nonrelocating parent can then respond in one of the three ways outlined in Section 31-17-2.2-5(a). Here, Father proceeded under the third option, which requires the nonrelocating parent to file the following: a statement objecting to the relocation; a motion that requests both an order preventing relocation and a modification of an existing court order; and a request for a hearing on the motion. *Id.* § -5(a)(3). At the hearing, the relocating parent initially bears the burden of proving that the "proposed relocation is made in good faith and for a legitimate reason." *Id.* § -5(e). If this burden is met, it shifts to the nonrelocating parent to "show that the proposed relocation is not in the best interest of the child." *Id.* § -5(f).

The trial court here found that Mother proved that her relocation proposal was made in a good faith and for a legitimate reason. And the court then determined that Father failed to establish that relocation would not be in the Children's best interests. Father challenges both conclusions, arguing that they are clearly erroneous and thus an abuse of the court's discretion; and he asserts that the court's order impermissibly infringes on his constitutional right to parent. We disagree and address each of Father's contentions in turn.

### I. The trial court did not err in concluding that Mother's relocation proposal was made in good faith and for a legitimate reason.

As both parties correctly point out, there is "no specific formula" for determining when a parent's relocation proposal is made in good faith and for a legitimate reason. Appellant's Br. at 9; Appellee's Br. at 14. That said, our court has recognized that this requirement must not pose "an inordinately high bar." *Lynn v. Freeman*, 157 N.E.3d 17, 25 (Ind. Ct. App. 2020) (citing *T.L. v. J.L.*, 950 N.E.2d 779, 788 (Ind. Ct. App. 2011)). To clear this bar, the relocating parent must "demonstrate an objective basis—that is, 'more than a mere pretext'—for relocating." *Gold*, 14 N.E.3d at 842. Here, the court did not err in finding that Mother cleared that bar.

Father broadly asserts that Mother "has not proven a legitimate, genuine basis for relocation." Appellant's Br. at 9. We find, however, that the trial court made several findings to support its conclusion that Mother demonstrated "an objective basis" for relocating. More specifically, the court found that: Mother has declared her intent to relocate to Florida for years; both Mother and Father

have several family members living in Florida; and the Children are familiar with the area and have good educational opportunities. Appellant's App. pp. 25, 27–28. As shown below, ample evidence in the record supports those findings, which in turn support the court's conclusion that Mother's relocation proposal was made in good faith and for a legitimate reason.

[15] In August 2017, soon after the parties divorce was finalized, the court issued an order awarding Mother primary custody and granting her permission to relocate to Florida within sixty days. *Id.* at 45. Though it's true that Mother did not relocate at that time, it is also true—as the court observed here—that Mother's current relocation request "is not a surprise to anyone." *Id.* at 28. Indeed, the GAL testified that Mother "has been wanting to move back to Florida for a long period of time." Tr. p. 47. And, as the court learned throughout the hearing, Mother has an objective basis for wanting to return.

[16] The family lived in Florida—with the exception of a few months—from November 2006 until February 2015. Several of the parties' family members reside in the state, including: Mother's parents, siblings, aunts, uncles, and cousins; and Father's mother and stepfather, an uncle, and a cousin. As we have observed on several occasions, moving to be closer to family can be an objectively good-faith reason for relocation. *See, e.g.*, *T.L.*, 950 N.E.2d at 787–88 (collecting cases). In addition, the Children were born in Florida, and L.M. specifically has spent the majority of her life there. They have returned to visit on several occasions and are "very familiar with everything" in the area. Tr. p.

85. And the Children have been accepted into "very good" schools that Mother is already familiar with. *Id.* at 71–73, 76–77.

[17] In short, the trial court's evidence-based findings support its conclusion that Mother's proposed relocation to Florida was made in good faith and for a legitimate reason. That conclusion is therefore not clearly erroneous. We now turn to the court's other challenged conclusion—that relocation would be in the Children's best interests.

## II. The trial court did not err in concluding that that relocation would be in the Children's best interests.

[18] In determining whether relocation is in a child's best interests, the trial court must consider the following factors:

> (1) The distance involved in the proposed change of residence.

> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

> (5) The reasons provided by the:

> (A) relocating individual for seeking relocation; and
>
> (B) nonrelocating parent for opposing the relocation of the child.

> (6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(c). The final category refers to the statutory factors, found in Indiana Code section 31-17-2-8, that a trial court must consider when making a custody determination, which include: the child's age and sex; the parents' wishes; the child's wishes; the child's relationship with parents, siblings, and any other person affecting the child's best interests; the child's adjustment to home, school, and the community; and the mental and physical health of all individuals involved.

[19] Here, the trial court concluded that "it is in the [C]hildren's best interests at this time to allow Mother to relocate to Florida." Appellant's App. p. 28. Father asserts that the court "did not substantively account for the best interests" as required by statute "as the evidence does not support the move is in the [C]hildren's best[]interests." Appellant's Br. at 10. Contrary to Father's claim, our review of the record reveals that the trial court thoroughly considered each statutory factor and included evidence-based findings—none of which Father specifically challenges—that ultimately support the court's best-interests conclusion.

### A. Distance Involved

Mother explained that the approximate distance from Scott County, Indiana—where Father lives—to Bradenton, Florida is 914 miles, which is about a thirteen-hour drive. Tr. pp. 91–99. The court acknowledged that "[t]he distance involved is great," but found that it "is not so great . . . that the parties could not make it work." Appellant's App. p. 26. That finding is supported by ample evidence in the record, including Mother's testimony that she would meet Father at "a halfway point" or otherwise comply with "whatever the Court decides." Tr. p. 80.

### B. Hardship and Expense on Father

Father explained that relocation would be a hardship in two ways: (1) he would no longer be able to spend half of his time with the Children; and (2) he "can't afford to keep going to Florida to see the kids." *Id.* at 12–13. The court acknowledged each hardship by providing Father with parenting time as recommended by the GAL and giving Father several feasible options to exercise that parenting time. Appellant's App. pp. 26, 28–29. In terms of Father's ability to afford travel-related expenses, we acknowledge that he is on disability. But we also note that Father recently held a part-time job and expressed a desire to work again "in the near future." Tr. p. 18. Further, Mother is not requesting financial support from Father, *see id.* at 82–83, and thus any additional money he earns could be used to see the Children in person. All of this evidence supports the court's finding that, while the travel options "are difficult," they are not "unduly burdensome." Appellant's App. p. 26.

### C. Feasibility of Preserving Father's Relationship with the Children

[22] Father expressed understandable concern that relocation would cause a strain on the bond that he shares with the Children. Tr. pp. 31–32. The court acknowledged that "the relationship between the parties and the [C]hildren" will change, Appellant's App. p. 27, and we too are sympathetic to Father's unease. Yet, any relocation will affect the relationship between a child and a devoted nonrelocating parent. *See T.L.*, 950 N.E.2d at 789 (observing that a significant adverse effect on a nonrelocating parent's relationship with their children "cannot be determinative" or the statute "would never allow for a long-distance move"). And with current technology, "[p]hysical distance does not prevent parents . . . from communicating effectively about education, health care, religion, and other aspects of a child's upbringing." *In re Paternity of W.R.H.*, 120 N.E.3d 1039, 1042 (Ind. Ct. App. 2019). The trial court echoed this sentiment, noting that, "[w]ith today's technology," the close relationship the Children share with each parent "should not change with relocation." Appellant's App. p. 27. To that end, Mother testified that she would "absolutely" be willing to ensure Father "has some regular communication" with the Children via Facetime or Zoom. Tr. p. 81. All of this evidence supports the trial court's finding that the Children could "maintain daily contact" with Father. Appellant's App. p. 27.[4]

---

[4] We also note that, per this factor's requirement, the court considered the parties' financial circumstances. Appellant's App. p. 27.

*D. Pattern of Conduct by Mother to Thwart or Promote Father's Contact with the Children*

[23] Father complained that Mother had "been undermining [his] authority with [the Children] . . . on a lot of things." Tr. p. 13. Mother disagreed with Father's allegations on that point, and the GAL did not believe that Mother had undermined or attempted to undermine Father in anyway. *Id.* at 46–47. After hearing this evidence, the court acknowledged Father's claim "that Mother is not supportive of his role as Father," but found it did not show "an established pattern that parenting time would be thwarted." Appellant's App. p. 27. Indeed, Father testified that Mother "is a good person." Tr. p. 35. And, as noted above, the court heard Mother unequivocally express a willingness to promote Father's contact with the Children if they moved.

*E. Reasons for Seeking or Opposing Relocation*

[24] Father opined that the Children "shouldn't move to Florida" because "they've already been established here." Tr. p. 21. Yet, the evidence favorable to the court's judgment belies Father's assertion. The GAL testified that only L.M. was involved in any extracurricular activities at the time: she played basketball, which had recently ended; and she participated in show choir, which she was set to continue in Florida. Further, the Children were born in Florida, and L.M. has lived there for a majority of her life. As Mother explained, "they're very familiar with everything down there." *Id.* at 85. And though a few of Father's family members live in Indiana, the GAL explained that "a majority of the [parties'] family members" are in Florida. *Id.* at 47.

In addition, Mother's return to Florida has been years in the making. The GAL noted that Mother "has been wanting to move to Florida for a long period of time," *id.*, and the court similarly found that "Mother has discussed relocation back to Florida since the time the divorce was filed," Appellant's App. p. 27. The GAL also, after providing several reasons, expressed her belief that it would be in the Children's "best interest[s] to be able to go back to Florida." Tr. p. 48. This sentiment supports the court's finding that the GAL "clearly believes relocation is appropriate." Appellant's App. p. 27.

*F. Other Factors Affecting Best Interests*

The trial court also received evidence on the relevant factors outlined in Section 31-17-2-8 and made the following findings: (1) both Mother and Father have several family members in Florida; (2) L.M. had a discussion with Father in which she expressed her desire to move and her excitement for her new school; (3) the Children will be attending schools Mother is familiar with; (4) both Mother and Father involved the Children in custody and parenting time decisions; and (5) "[t]here is actually little to prevent Father from moving back to Florida." *Id.* at 28.

Father does not specifically challenge any of these findings; he instead baldly asserts that the court must consider "[t]he interaction and interrelationship of the child with the child's parents" as well as the Children's "adjustment to home, school and community" Appellant's Br. at 14–15 (citing I.C. §§ 31-17-2-8(4)(A), -8(5)). Yet as we have already explained—with several examples above—the trial court did consider both factors; the court just highlighted

different evidence and weighed it differently than Father would have liked. This is not a basis for finding error in the court's best-interests determination. *See D.C. v. J.A.C.*, 977 N.E.2d 951, 957 (Ind. 2012).

[28] In sum, the trial court thoroughly considered each statutory factor and issued evidence-based findings supporting its ultimate conclusion that relocation would be in the Children's best interests. That conclusion is therefore not clearly erroneous. In closing, we turn to Father's final argument—that the trial court's decision infringes on his constitutional rights.

### III. *The trial court's decision does not impermissibly intrude on Father's constitutional right to parent.*

[29] Father contends that the trial court's decision "impermissibly encroaches on his [c]onstitutional rights as a parent." Appellant's Br. at 16. His argument seems to focus on the fact that the relocation statutes—and caselaw interpreting them—allows Mother to obtain primary physical custody without needing to demonstrate a "substantial change" in circumstances, which is required for other custody modifications, I.C. § 31-17-2-21(a) (referencing the factors in I.C. §§ 31-17-2-8, -8.5). And, in Father's view, such a result "is an impermissible intrusion upon" his constitutional right to parent. Appellant's Br. at 17. He is incorrect.

[30] Over a decade ago, our supreme court provided several reasons why a relocation-driven custody modification does not require a "substantial change"

in any of the factors listed in Section 31-17-2-8. *Baxendale*, 878 N.E.2d at 1256–57. The *Baxendale* Court explained,

> In most cases the need for a change in a Section 8 factor is likely to be academic because a move across the street is unlikely to trigger opposition, and a move of any distance will likely alter one of the Section 8 factors. For example, Section 8 requires evaluation of the effect of relocation on the interaction between the child and other individuals and the community. It is hard to imagine a relocation of any distance where there is no effect on the "interaction" of parents, etc. with the child or the child's adjustment to home, school, and community.

*Id.* at 1257. Thus, our supreme court has already rejected Father's argument that relocation "begs for the custody-modification approach." Appellant's Br. at 16.[5] And even if we agreed with Father that the good-faith-and-legitimate test—under Section 31-17-2.2-5(e)—is "relatively easy," Father has not shown how it is any "easier" than if relocation instead called for a "substantial change" in circumstances, which is "likely to be academic," *Baxendale*, 878 N.E.2d at 1257.

[31] The *Baxendale* Court also described why the relocation statutes adequately account for a nonrelocating parent's constitutional right to parent. Ultimately, the "fundamental point . . . is that a relocation may or may not have significant effects on the **child's best interests**." *Id.* (emphasis added). The court later

---

[5] In making this argument, Father posits that, since *Baxendale*, "a diligent search revealed no cases where the grant, or denial of relocation by the trial court was ultimately overturned[.]" Appellant's Br. at 16. He is again mistaken. For a published decision, we direct Father to *Paternity of X.A.S. v. S.K.*, 928 N.E.2d 222 (Ind. Ct. App. 2010), *trans. denied,* and our research also revealed several unpublished decisions reversing a trial court's relocation decision.

explained, when specifically addressing the parent's constitutional challenge, "that the child's interests are powerful countervailing considerations that cannot be swept aside as irrelevant in the face of" either parent's constitutional interests—including a nonrelocating parent's constitutional right to parent. *Id.* at 1259. And our relocation statutes sufficiently address that right "by considering whether the relocation is indeed bona fide, and explicitly acknowledging the child's interests and the effect on" the nonrelocating parent. *Id.* at 1259–60. Put another way, a nonrelocating parent's constitutional right to parent "may be impinged upon where such relocation is not in the children's best interests." *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1257 (Ind. Ct. App. 2009).

[32] Simply put, while we agree with Father that there "is no evidence in the record [that he] has ever done anything wrong," Appellant's Br. at 16, that fact is largely irrelevant here. What matters is whether Mother's good-faith proposed relocation was in the Children's best interests. And the trial court determined it was. If Father had shown that was not true, then the court would have found otherwise. Or if Father had shown that the court's best-interest conclusion was clearly erroneous, we would reverse. But he has failed to make either showing.[6]

---

[6] Father also contends that he "suffers the burden demonstrate" relocation is not in the Children's best interests. Appellant's Br. at 17. To the extent that Father is challenging the burden-shifting language in Section 31-17-2.2-5(e), this is a matter to be taken up with our legislature.

Thus, Father has not suffered an "impermissible intrusion" on his constitutional right to parent.

## Conclusion

[33] The trial court did not err in granting Mother's request to relocate and modifying both custody and parenting time. And that judgment does not impermissibly infringe on Father's constitutional right to parent.

[34] We affirm.

Altice, J., and Weissmann, J., concur.